Ms. Rowland, good morning. May it please the Court, I represent Mr. Smith and I'll be arguing on behalf of Mr. Smith and Mr. Lionel. The parties agree that intimidation is words or conduct that threaten not just force, but violent physical force, bodily harm, unless the person complies. Mr. Smith and Mr. Lionel asked the tellers to give them money, in particular denominations, but their words and their conduct did not suggest violent physical force would follow. How did the tellers react to this? I know it's an objective test, but how did the tellers react to this? In both cases, the tellers froze and didn't provide any money. And explained that, right? That they were scared. They were afraid. What are we supposed to make of that? It's an objective test, but does that help us at all? It's an absolutely objective test. And there was an objection to that testimony. The judge allowed it in. I think it actually has no relevance. I don't think it really should. In understanding what a reasonable teller would do, it's not pertinent to see what actual tellers did? These are separate tellers, right? Separate instances? Yes. I don't think any juror would find it difficult to imagine how a teller might react to any particular circumstance. And we have eight circuits who said a demand for money is intimidating. In a bank. It's different than a demand for money from a homeless person, I think is an example that you all give. It's very different, right? Somebody comes into a bank and says, give me your money. Put your hands up. Don't put them down. That's not intimidation. Well, I would like to challenge the idea that a demand note itself is inherently intimidating. And that is what those courts have said. Eight of them? For example, a demand note that says, this is not a robbery, but can you give me money, might not cause a reasonable person to be intimidated. Those aren't these facts or anything close to these facts, are they? They're not, although the demand note in this case said, give me your money in particular denominations. The second demand note just had denominations. It didn't make a demand. They're all called demand notes, but it didn't actually make a demand. But in addition to handing the note of denominations, what did he say? He said, give me the money. And what else did he say? Well, he later said, keep your hands, or don't put your hands down. Don't put your hands down. In one of the cases cited by the government, United States v. Gilmore, Mr. Gilmore was extremely busy. He was charged with eight bank robberies. In one of the robberies, he held up a note that was blank. It said nothing. And the court upheld that conviction simply because he held up a piece that was considered a demand note that he held up. That's not our case, right? Well, it's not our case, but surely it can't be the law. I'm arguing that these eight circuits are really wrong, that any demand note... We don't have to say that to rule for the government here. What we have is a note saying, give me the money and the denominations afterwards, and the second robbery. Right. And then I think the note has to be evaluated in light of the circumstances where the tone was conversational, there was no weapon displayed or hinted at, there were no threatened gestures. Let me just ask one thing, because there's a lot of discussion here about whether the robbery itself was intimidating, but they weren't convicted of that. They were convicted of conspiring to rob by intimidation. Correct. Which seems to me the question is not whether they actually even succeeded in being intimidated, but whether we can tell by their course of action that they conspired to rob by intimidation. And that would mean we would look at what happened in the first bank, and then they went and had a meeting in a deli or a restaurant and changed their whole mode of operating. They had two people focused on one teller, added the thing about not lowering halves. I mean, you see a big difference in how the robbery was conducted between the two. So why isn't there sufficient evidence on this record to answer the question we have to answer, and that is whether there was sufficient evidence that they conspired, that they agreed to rob by intimidation, even if they didn't actually intimidate. It's because there must be an overt act, and here the overt act was in going to the bank, producing a note, asking for money. There's a long list of overt acts. The overt act itself doesn't have to be intimidating. The overt act could have included going into the bank and walking up to the teller. That's starting to implement the conspiracy. But if they agreed, if they, and I'm not saying there's evidence like this, but in a hypothetical case, said let's go in, let's scare the dickens out of them, let's get them to give all the money, and that was recorded. There was solid evidence of that agreement. And then they got in there, and they went up to a teller and said, I want 10s and 20s, and they started shaking in their boots and ran off. They could be guilty of conspiracy, even though in fact saying I'd like 10s and 20s wouldn't be enough. Here, there's absolutely no evidence of any text or conversations. No, but you see a change in behavior between the two banks. They clearly changed, they upped the intimidation game between the two. The first robbery, only one of them was talking to the teller. The other one was not around. The first robbery, there was no instruction about hands. The second robbery, they were keep your hands up, give me the 10s and 20s. And they were both, what one case has found relevant is when the second person is glaring at the teller. So it just seems to me that I'm not sure why we're talking all about whether they succeeded in being intimidating. Would the evidence show they succeeded in being intimidating as opposed to their actions show that there was an agreement to rob by intimidation and at least one overt act? Well, one reason we're talking about it is because the government never raised that below and has not raised that in this appeal. They have never argued that. So are we supposed to write opinion that says there was sufficient evidence to find that they actually robbed by intimidation or that they conspired to rob by intimidation? Which are we supposed to hold? They weren't convicted of, they weren't convicted of, you win your argument. The parties agree that this really does come down to intimidation. What's the definition and is it met under these facts? Well, the parties agreed was that their acts reflected what they planned to do. And those acts included a meeting where they talked, no one knows what they said, and they changed the way they did the second bank robbery. That's as plain as day on the record on the facts in both your briefs. There's, other than that conversation where in a restaurant where no one knows what's said, there's absolutely no evidence of their agreement other than what they actually did. Right. Would you agree there's a change in the way the two robberies were conducted? You know, I'm not sure I would because in the first robbery, Mr. Lionel said, he spoke, he said, give me the money, give me the money. And in the second robbery, Mr. Smith spoke saying, don't put your hands down. I'm not sure there's a difference between those two. That one was glaring at the teller at the same time, whereas in the first robbery, Mr. Smith was over off doing something else. It was a solo, it was a solo effort. I don't think the testimony was glaring. The testimony was that he was looking around and staring. Staring at the teller. But I don't think that that's, I mean, the two, in both cases, the two went in together. And it's just has to be the argument has been about whether they actually succeeded in intimidating. And that's just not the issue. And I'm confused about why that's what this argument is about, because, in fact, you might well be right, because they were acquitted. They were not convicted of the actual bank robberies. They were only convicted of the conspiracy. And the only evidence of the conspiracy is what they actually did. It would be different if they were text messages or recorded conversations or something saying, let's go rob some banks. And first thing we'll do is we'll go get a gun. And then they go to a gun store. But that's not what happened here. They just showed up in a bank. They changed who was talking to the teller. They switched that. That didn't work the first time. That clearly didn't work. We didn't get any money. I'm going to go talk to the teller this time. And you stay right by me. Don't go off and wander it off like I did before. And that alarm went off. So we're going to order them not only to give us money but not to put the hands down. Well, certainly they were not aware of any alarm because it's a silent alarm. Good. They seemed to be aware. I don't know why they would tell them to keep the hands up the second time. Oh, I'm sorry. I thought you meant in the first robbery an alarm. Oh, no. But they seemed to have some sense of that. Because by the second robbery, they wisened up and said, don't put your hands down, where someone could activate an alarm. Or they were thinking that's how the alarm would get activated. Right. I assume that's why. I don't know. I'm not a bank robber. Is there another reason you don't want people to put their hands down? Because they've got to get the money out. That, I think, actually goes back to Judge Griffith's point about whether we need teller testimony that they were afraid. The court can imagine how a bank is robbed. We've all watched TV. We've read these cases. We all know that banks do have alarms. They have silent alarms. And that really goes to why we don't. I know that's not what your court is asking, but I thought about it. We know how these things work. In this case, because there is no evidence of their conspiracy other than what they did, and what they did was, I argue, virtually identical. Yes, switch roles. Who was doing the talking? But virtually identical. Could a reasonable jury think that they upped their sort of forcefulness in the second robbery? Two on the teller rather than one. By saying, don't put your hands down? Don't put your hands down. And two on the teller rather than one. Could a reasonable jury, not that they couldn't think of other things, but could a reasonable jury infer that from the record? I think a reasonable jury might be able to infer that they, in saying that, that they are thinking of an alarm. Would it be thinking that they changed the way they did the robbery between the two? Would it be unreasonable for a jury on these facts to see that they tried a robbery, it failed, they met up and talked, and then did a second robbery that was conducted in different ways? Presumably they thought the second would go better than the first. Right. A jury could infer that. It didn't. And it wasn't qualitatively different. I mean, it wasn't enough different to make a difference for them to actually get any money the second time around. It didn't succeed. That's the accident. They were not convicted of actual robbery. It's just the conspiracy. Well, they couldn't have been convicted of the Maryland robbery. Let me make sure I understand. Is your argument that there was no conspiracy to intimidate because there was no intimidation? Exactly. Because there's no evidence. No evidence of intimidation. Of conspiring to intimidate because all the evidence we have is what they actually did. And what they actually did was not intimidation. And there's no extra evidence that would say that was the plan and they just simply failed in their plan. They failed to be sufficiently intimidating. So you're asking us to the way you frame this case, you're asking us to decide whether these actions were intimidation. Yes. Okay. Okay. That's helpful. Thank you. Mr. Hansford. Good morning, and may it please the Court. Eric Hansford for the United States. As other circuits have consistently recognized in the special context of a bank, merely presenting a demand note standing alone is sufficient to uphold the jury's finding of intimidation. Can you please answer my concern here? Are we supposed to decide they were not convicted of robbery by intimidation. They were convicted of conspiring to rob by intimidation. That's right. Am I correct in thinking that one can be guilty of, there can be sufficient evidence of a conspiracy to rob by intimidation, even if they were complete nincompoops and failed to actually rob by intimidation? So I guess two things on that. I think I agree with what Judge Griffith was saying that the conspiracy to rob by intimidation requires an agreement to rob by intimidation. So here, because they certainly can come apart, but here because the only evidence that we have of the scope of the conspiracy is what they actually did during the course of the robbery. That's not true. You also have evidence that they met in between the two robberies and changed how they conducted the robberies. That's true. I'm just baffled by how these arguments have come here. No one talks about there's sufficient evidence of conspiracy, which is the only thing they were convicted of. I think that our argument is still ultimately that there is sufficient evidence of conspiracy. It's just that we don't have anything about the scope of their conspiracy outside of their actions. In other words, we don't know what they. But it includes the fact that they stopped and met in between the two robberies and there was a change. One can argue how significant or not, but there was certainly a change in how the second robbery was conducted. I guess I just don't see how the change matters unless the change actions with themselves amount to intimidation, because the agreement itself has to be for intimidation. Can you just answer my question directly because this will make things easier? Sure. Can you conspire to and be guilty of that even if when you got to the bank your acts were not intimidating? Yes, absolutely you can. But I also think that here it's important. I think part of your question was even if they didn't ultimately succeed in robbing by intimidation. So the question is not whether they ultimately get the money. The question is whether they go up to the teller and have conduct that would intimidate a reasonable person. But even if they didn't succeed in intimidating when they got to the bank and for that reason didn't get any money, so they didn't rob either, they could still be guilty of the conspiracy if they planned. They just executed really badly. That is absolutely true. But I just don't think that. Isn't that what this case is about? I think that this case, I think that the court can certainly consider the conspiracy here. I just want to. Consider that's the only issue. Am I wrong? That's what they were convicted of. That is correct. That's what they were convicted of. Right. It's just that the government doesn't have additional evidence. But I just want to push back on the notion that this was a failed robbery because they didn't get the money. What's required for a bank robbery is an attempt to take money and to do so by intimidation, where intimidation is words or conduct that would cause a reasonable person. No one is saying that, but you didn't get convictions on the robbery here, so that doesn't really help you. Well, I think it does because the question is not whether they ultimately get the money. The question is whether their actions would intimidate a reasonable person. And they did. In fact, they did intimidate the tellers here. The failure here was the fact that the tellers were scared by the actions. The first teller froze. The second teller didn't put her hands down because that's what she had been commanded to do. That ultimately thwarted. If they hadn't been scared, could you still have intimidation by the fact that there was a note, and oral demands? Yes. And so I think what eight circuits have said, or at least what six circuits have said, is that mere demand notes enough. Two other circuits. Did they write those demand notes when they walked into the bank or come in with them? I think based on the surveillance video, it appears they already had the demand notes when they came into the bank. It was kind of part of the conspiracy agreement. That's correct. We do think that there are other elements that establish intimidation here beyond the mere demand notes. The defendants were seeking to control the tellers' actions. They were saying, don't put your hands down, give me the money, specifying the particular types of bills that the tellers should be handing over. In the first robbery, it was clear to everybody that everybody knew that the defendants did not have any right to the money that they were demanding, because they just asked moments earlier about how to open an account there. And we also have that they were operating together, and so two people coming into a bank together and demanding money is a more intimidating situation than a single person coming in and demanding money. And your argument has been very sort of totality of the circumstances like you just explained. Are you asking for a bright line rule that notes by themselves automatically? I think that other circuits have drawn that bright line, and we think this Court needs it. I haven't seen that many that actually do that. So I believe that in that footnote that we have, or that string cite that we have of the eight circuits, I believe the First Circuit in Henson, the Third Circuit in Andrews, the Fourth Circuit in Hutchin. Well, the First Circuit said, listed a whole bunch of circumstances, and said under those circumstances the demand and the other circumstances. And then there was threats in the Second Circuit case, Lawrence. In the Fifth Circuit case, they said, I'm engaged in a bank robbery. They told them they were engaged in a bank robbery. And Gilmore, they also noted the bank teller's testimony about feeling scared. Let's see, the Seventh Circuit said, this is a holdup, they told them. So it was more than just demanding money. And some of them emphasize that there's both verbal and written demand. So I didn't see actually a whole body of case law that said the note by itself is the end of the story. So I agree there are additional facts in those cases, but what the circuits actually say when they're upholding the demand note or the finding of intimidation. Well, the First Circuit said under these circumstances, referring to all the circumstances. I think the... And there was more than just, the problem is there was more to the notes than just a demand for money. You know, if they say this is a robbery, this is a holdup. I do believe the Sixth Circuit, the Seventh Circuit, the Ninth Circuit say a mere demand note is enough for intimidation. And I do think in those eight cases that we cite in the footnote, Henson in the First Circuit, Andrews in the Third Circuit, Ketchum in the Fourth Circuit, Gilmore in the Sixth Circuit, Clark in the Seventh Circuit, and Nash in the Ninth Circuit all draw that bright line when they're articulating the law. A mere demand note just for money. It just says give me money in some way, shape, or form. Right. As long as it's a clear demand for money, yes. Just on the appellant's hypothetical where someone walks into a bank and says this is not a robbery, can I please have money. I'm not sure that actually does qualify as a demand note. How about I go to my bank. I think the teller's going to recognize who I am. Turns out I'm wrong about that. And I've got laryngitis, so I write on a paper, give me 10s and 20s. So I think that that would potentially qualify as a demand note, but I think you'd probably fail on the mens rea element. So it would fail for another reason, but. Is that intimidating because I said give me 10s and 20s? I think it would have to do with the circumstances. I think all the demand notes. Even if the teller wasn't intimidated because the teller didn't in fact recognize me. Well, and so I think if there's evidence that the teller. You just told me the mere note is enough. I thought that's what you said. So we're not saying that every single time there's a note that that's going to be enough. We're saying that in the typical robbery case where all the evidence that you really have in the case is somebody walks in. So you aren't looking for the bright line rule that a note is by itself going to be enough. You have to look at all the circumstances. You do have to look at all the circumstances. I think that's pretty powerful. The note's very powerful. And in the typical case where you don't have anything undermining the demand note, then that is going to be enough. That's what the other circuits have said. Are you saying that a note is evidence of intimidation plus what? What else needs to be there? You're now saying, as I understand it, a note by itself is not necessarily always intimidation. It's intimidation when? It is intimidation when there are no other circumstances. So it's intimidation in these typical robbery cases. What happens is somebody walks in, hands over a note demanding money, goes up to the teller, and that's essentially all the real evidence that you have. That's going to be enough. That's what the other circuits have said. And there isn't different than judgment. That's hypothetical. So there can always be additional circumstances that would undermine the demand and make it not intimidating. So if I walk up to a teller and I say, I'm doing this on a dare. Please don't take me seriously. Please don't actually give me money. It depends what the note says. So when the ones say, this is a bank robbery, or this is a holdup in the note, and then give me the 10s and 20s, that's going to be a different case. If somebody just says, I'd like 10s and 20s, I don't know whether the person's got laryngitis. So I think what the other circuits, the line that the other circuits have drawn, is a clear demand for money standing alone. But to have a clear demand for money may require more than to say, I want 10s and 20s. I think I have not seen I want 10s and 20s. And I think that's closer. Isn't that what they said in the second bank here? Here they said, in the first bank, they said, give me all your money. The second bank, they said, give me the money, give me the money. And then the note had denominations. Okay. And so those in combination. Maybe I missed it. Could you go back to Judge Millett's hypothetical where she appears to the bank, to the bank teller that she has laryngitis and writes down, you know, give me 10s, 20s, 30s, up to $500. Why is that not intimidation? So I think that. The teller doesn't know who she is. I think if we have nothing else, then I think that probably would qualify as intimidation, though it's closer. I think it would fail on the mens rea element, so she would not be guilty. However, I think in her hypothetical. Hang on. Like, the jury gets to infer mens rea. There's usually not a whole lot. You're saying there's going to be sufficient evidence or not? Well. I mean, I wasn't demanding. I wasn't intending to intimidate. Well, I think if there's evidence that you have an account there and that you have laryngitis and that's why this is happening. The question is whether you would. That's my testimony. Well, the question. Maybe I'm lying. The question is whether you would know that it would be taken as intimidation. And so surely a jury could discredit your testimony. But if people agree that that is true, then I think that would probably have a hard time meeting the mens rea element. It's not on the intimidation element. However, if the teller does know you and understands that this is not an attempt to. But you said the teller's reaction is not dispositive. Well. I wanted to rule that the note itself can be dispositive. That is correct, that the teller's reaction is not dispositive. But the question is what an objective person in the teller's situation. So an objective person in the teller's situation. When I come in and say give me 10s and 20s because of my laryngitis, which the teller doesn't know about. Right. So an objective person would feel intimidated by that, even though the actual teller who knows me and knows that I have an account in the bank isn't intimidated. So I haven't seen. Just because there's a note that says give me 10s and 20s. I think, though I haven't seen analysis of this, that you would take into account things that the teller knows. In fact, in the Gilmore case. It's not a subjective test. No, but you could still take into account the objective circumstances that are known to the teller. So the fact that. What's an objective circumstance there that's known to the teller? Is that an objective about whether the person knows me or not? For example, in the Gilmore case, there's evidence the defendant keeps going back to the same robberies. So those are things on top of the demand note. But but so there's evidence that the tellers are recognizing the defendant when he reenters the bank. And so that's that's an objective circumstance. You're not saying that the question is the timidity or bravery of the teller. You're asking what would an objective person. How would an objective person in the teller circumstance react? But I think that is going to take into account the totality of the circumstances in the case. If there are no further questions, we've asked the convictions before. This role would have any time. Why don't you take a minute? We agree that the court needs to look at the surrounding circumstances, not simply the note. And I just wanted to point out that one of the circumstances here was that Mr. Smith and Mr. by plexiglass. And in the case of the D.C. bank, by three layers of plexiglass, they made no threatening gestures. They did not suggest in any way that harm would come to the tellers. And, of course, what's the holding up your hands? Don't put your hands up. Don't put your hands down. Put your hands down. Does not imply that. And if you do, you will come to physical harm, particularly in the circumstances where they're talking in a conversational tone. There's plexiglass between them. There's no intonation of a weapon. If there are no further questions, we will submit and request the court to vacate. Mr. Smith and Mr.
judges: Henderson, Griffith, Millett